ALLNET COMMUNICATIONS SERVICES, INC., APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Allnet Communications Services, Inc. v. Pub. Util. Comm. (1988), 38 Ohio St. 3d 195.]

*Allegation of receipt of inferior access services—Complaint is unlawfully and unreasonably dismissed, when—R.C. 4905.26.*

(No. 87-223—Submitted May 17, 1988—Decided August 24, 1988.)

*Bell & Bentine Co., L.P.A., Langdon D. Bell, John W. Bentine* and *Judith B. Sanders,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert S. Tongren* and *James B. Gainer,* for appellee.

*Donald W. Morrison, M. Lee Graft* and *Charles S. Rawlings,* urging affirmance for intervening appellee Ohio Bell Telephone Co.

*Per Curiam.* R.C. 4905.26 provides in part as follows:

*"Upon complaint in writing against any public utility by any person, firm, or corporation,* or upon the initiative or complaint of the public utilities commission, *that any rate, fare, charge, toll, rental, schedule, classification, or service, or any joint rate, fare, charge, toll, rental, schedule, classification, or service rendered, charged, demanded, exacted, or proposed to be rendered, charged, demanded, or exacted, is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law,* or that any regulation, measurement, or practice affecting or

relating to any service furnished by said public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential, or that any service is, or will be, inadequate or cannot be obtained, and, upon complaint of a public utility as to any matter affecting its own product or service, *if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof, and shall publish notice thereof in a newspaper of general circulation in each county in which complaint has arisen.* Such notice shall be served and publication made not less than fifteen days nor more than thirty days before hearing and shall state the matters complained of. The commission may adjourn such hearing from time to time." (Emphasis added.)

In essence, the gravamen of Allnet's complaint is that it is required to pay premium access rates while receiving inferior access services. It appears that these allegations do set forth reasonable grounds for complaints that the services received, the rates for those services, and Ohio Bell's practices affecting or relating to those services are unreasonable, unjust, discriminatory and unjustly preferential in violation of R.C. 4905.32, 4905.33 and 4905.35. The PUCO's entry dismissing Allnet's complaint acknowledges that these issues need resolution. Thus, the PUCO was required by R.C. 4905.26 to set a hearing to consider the merits of Allnet's allegations. See *Allnet Communications Services, Inc.* v. *Pub. Util. Comm.* (1987), 32 Ohio St. 3d 115, 512 N.E. 2d 350.

We hold that the PUCO unlawfully and unreasonably dismissed Allnet's complaint. We reverse the PUCO's entry and remand this cause to the PUCO for a hearing within a reasonable time pursuant to R.C. 4905.26. We leave to the PUCO's discretion the issue of whether the hearing should be limited to Allnet's complaints against Ohio Bell or part of a "generic" proceeding.

*Order reversed and cause remanded.*

MOYER, C.J., LOCHER, HOLMES and H. BROWN, JJ., concur.

SWEENEY, DOUGLAS and WRIGHT, JJ., dissent.

DOUGLAS, J., dissenting. I must respectfully dissent from the opinion and decision of the majority. While the opinion and determination of this court appear to be innocuous, non-specific and "generic" in nature and, therefore, without serious consequences, upon reflection, I find our decision to be more impacting than is apparent on the surface.

Prior to the divestiture of AT&T, the United States (and, of course, the state of Ohio) had the most reliable and perhaps the most efficient telephone system in the world. Whether the breaking up of the "telephone" monopoly pursuant to federal antitrust law, see *United States* v. *American Tel. & Tel. Co.* (D.D.C. 1982), 552 F. Supp. 131; *United States* v. *Western Elec. Co.* (D.D.C. 1983), 569 F. Supp. 1057, will ultimately be in the public interest by improving service, lowering rates and fostering technological advances remains to be seen.

On a local level, the complications brought on by divestiture must be dealt with by the Public Utilities Commission of Ohio. The case now before us presents one of the problems arising out of the divestiture order. In dealing with the questions that arise, the

PUCO must do so in accordance with the laws enacted by the General Assembly and the rules and regulations promulgated by the commission. It must be remembered that in carrying out its mandated responsibilities, "[t]he commission shall possess the powers and duties specified in, as well as all powers necessary and proper to carry out the purposes of Chapters 4901., 4903., 4905., 4907., 4909., 4921., and 4923. of the Revised Code." R.C. 4901.02(A). It follows, then, that for the commission to be able to act or to be required to act, there must be a power or duty possessed by the commission.

In the case before us, appellant filed, with the PUCO, a complaint alleging that Ohio Bell Telephone Company was charging appellant an excessive rate for the access provided to appellant for intra-LATA long-distance telephone service. It is clear that appellant is a competitor of Ohio Bell. Accordingly, Ohio Bell filed a motion with the commission to dismiss appellant's complaint on the basis, *inter alia,* that use of the complaint process was not proper in seeking a competitive advantage because the commission has no jurisdiction over matters of competition.

The commission granted Ohio Bell's motion to dismiss. In doing so, the commission, while finding that some of appellant's contentions might have merit, found that the specific issue raised by appellant was not yet ripe for consideration by the commission. The order of the commission further indicated that the commission would on its own initiative conduct a "generic proceeding" at some future appropriate time and, therein, determine the issue as to whether and in what form competition should exist in the specific area questioned by appellant.

Appellant filed an application for rehearing alleging that the commission had not complied with the mandates of R.C. 4905.26. The commission denied appellant's application for rehearing.

R.C. 4903.13 provides, in part, that "[a] final order made by the public utilities commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable." The majority opinion herein finds that the PUCO unlawfully and unreasonably dismissed appellant's complaint. I do not agree.

The general conception, and properly so, is that the creation and continued existence of the PUCO is for the protection of the public in the public's daily dealings with regulated public utilities. The commission's bottom-line mission is to assure that the product and service required by the public from a public utility are readily available at a reasonable cost while insuring that the utility providing the service and product receives a fair rate of return. Accordingly, "[t]he Public Utilities Commission of Ohio is the representative of the people of the state of Ohio. It is the intermediary between the citizen-consumer on the one side and the public utility on the other. * * *" *Cleveland* v. *Pub. Util. Comm.* (1934), 127 Ohio St. 432, 435-436, 189 N.E. 5, 7. While appellant Allnet attempts to place itself in the position of being both a consumer of *and* a competitor to Ohio Bell, it is my view that it cannot be both. While appellant is, in effect, purchasing a service from Ohio Bell, appellant is also selling that purchased service to its own customers and, presumably, at a profit.

Appellant's position is hardly one of a member of the contemplated "public" or "citizen-consumer." It is clearly more akin to that of a rival

telephone company seeking an advantage in competing for business. It is attempting to do so through regulatory litigation. Such is not the mission of the commission. "* * * The General Assembly has not, to date, enacted legislation by which the commission may balance the interests of a public utility such as Ohio Bell vis-a-vis its competitors in a complaint proceeding." *Dayton Communications Corp.* v. *Pub. Util. Comm.* (1980), 64 Ohio St. 2d 302, 307, 18 O.O. 3d 478, 482, 414 N.E. 2d 1051, 1054.

Further, in its complaint appellant did not allege that Ohio Bell had violated any of the proscriptions found in R.C. 4905.22, 4905.32 or 4905.35. Appellant did allege a violation of R.C. 4905.33 without, however, specifically showing how said section was applicable. For the commission to be required to take cognizance of a complaint, pursuant to the mandate of R.C. 4905.26, there must be some reasonable showing that a utility has violated some statute, rule or tariff or that the utility is not providing proper service. There is no such showing here and, therefore, for the majority to reverse the decision of the commission and order a hearing pursuant to R.C. 4905.26 is, in my judgment, clearly erroneous. It makes little difference that the majority leaves to the discretion of the commission when the hearing should be held or what form it should take. By saying that the commission may conduct a "generic proceeding" but also saying that a hearing must be held in accordance with R.C. 4905.26, the majority opinion is internally contradictory. R.C. 4905.26 has specific strictures that must be followed when a complaint "hearing" is undertaken. This is markedly different from a "generic proceeding" which, in my view, is more in the nature of a study by the commission to determine if and what further regulation might be needed.

Today's majority decision will cause unneeded and unwanted confusion. It will be used as authority by those who seek, in the context of a consumer complaint case, to force the commission to regulate skirmishes between competitors. Such a result could be devastating.

Accordingly, I would affirm the order of the PUCO and therefore must dissent herein.

SWEENEY and WRIGHT, JJ., concur in the foregoing dissenting opinion.