OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Allnet Communications Services, Inc., Appellant, v. Public Utilities Commission of Ohio et al., Appellees.
[Cite as Allnet Communications Serv., Inc. v. Pub. Util. Comm. (1994),      Ohio St.3d      .]
Public Utilities Commission -- Telephone companies --
     Intra-state and intra-LATA access services and charges --
     Commission order affirmed, when.
     (No. 93-1612 -- Submitted May 24, 1994 -- Decided September 14, 1994.)
     Appeal from the Public Utilities Commission of Ohio, PUCO No. 86-771-TP-CSS.
     In United States v. Am. Tel. & Tel. Co. [D.D.C. 1982], 552 F. Supp. 131, affirmed sub nom. Maryland v. United States 1983, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472, the District of Columbia federal district court approved a consent decree dividing the Bell territory into Local Access and Transport Areas ("LATAs") (roughly the equivalent of area code boundaries in Ohio). The Bell Operating Companies ("BOCs") were limited to carrying traffic between telephones in the same LATA and providing access to their local exchange networks (on both an inter-LATA and intra-LATA basis) to AT&T and other long distance carriers ("interexchange carriers" or "IXCs"). In United States v. W. Elec. Co., Inc. (D.D.C. 1983), 569 F.Supp. 990, and 569 F. Supp. 1057, the district court further clarified the consent decree approved in AT&T. As to the access service to be provided by the BOCs, the district court required that it be "equal in type, quality, and price to that provided to AT&T and its affiliates." AT&T, supra, at 196; W. Elec., supra, at 1062.
     Prior to divestiture, AT&T was provided access to the local exchange networks through Feature Group C, which was superior to the Feature Groups A and B access provided to its competitors.1 Feature Group C was not only higher in technical quality than Feature Groups A and B, but also permitted AT&T to access the local network through "one-plus dialing."2 Under Feature Groups A and B access, AT&T's competitors could access the local network only by dialing multi-digit access codes. The federal mandate required inter-LATA equal access for all

IXCs to be provided through facilities equipped with Feature Group D, which provided the same technical quality of service and one-plus dialing for all IXCs on a presubscribed basis.3

The conversion to Feature Group D access was to be phased-in over a period of time.  During the interim, the district court ordered that reduced access rates be charged to those IXCs that received access inferior to AT&T (i.e., "non-premium" access).  AT&T at 199.  The Federal Communications Commission ("FCC") subsequently adopted rules and approved Ameritech's (Ohio Bell's parent) tariff for inter-state, inter-LATA access services that contained a fifty-five percent discount for non-premium service, i.e., access provided over Feature Groups A and B.  The rate for access provided over Feature Group D was not discounted.

The Ohio Public Utilities Commission ("commission") chose to "mirror" the FCC-approved access charges for intra-state (inter-LATA and intra-LATA) traffic in its May 21, 1984 order in case No. 83-464-TP-COI, without specifically addressing the district court's distinction between inter-LATA and intra-LATA equal access.  Thus on an inter-LATA basis, the BOCs are to provide to the IXCs access equal to that provided AT&T, which would include one-plus dialing on a presubscribed basis through Feature Group D.  However, on an intra-LATA basis, the district court's definition of equal access did not include dialing parity as in the inter-LATA definition.  Rather, it permitted inequalities between the BOCs on the one hand (which subscribers could access using one-plus dialing) and AT&T and the its competing IXCs on the other hand (which subscribers could access by using a five digit-code ["10XXX"]).  The court permitted this inequality, noting that one-plus dialing for all would involve presubscribing to either an IXC or BOC.  It reasoned that most, if not all, subscribers would choose an IXC because, under the terms of the consent decree, an IXC can carry inter- and intra-LATA toll calls, while the BOCs can carry only intra-LATA calls.  It stated that "it was not the Court's intention to require the decimation of the local telephone networks or to deprive customers of the conveniences and cost benefits which the Operating Companies have succeeded in making available to them."  W. Elec., supra, at 1108.  Ultimately, it left to the individual states what intrastate calling arrangements best suited their circumstances.  Id. at 1109.

On May 7, 1986, appellant, Allnet Communications Services, Inc. ("Allnet"), an IXC which provides inter- and intra-LATA toll service in Ohio, filed a complaint with the commission, under R.C. 4905.26, alleging that Ohio Bell's intra-state, intra-LATA access services and charges were unjustly discriminatory, unreasonable, and unlawful.  Allnet contended that it was paying premium access rates while being provided inferior access service.  It requested that its access charges be reduced to reflect the "non-premium" service it was receiving, and that Ohio Bell be required to provide one-plus access to Allnet and other IXCs, upon their request.

The commission granted Ohio Bell's motion to dismiss the complaint, finding that the issue of intra-LATA access charges should be addressed in a generic proceeding initiated by the commission and involving all IXCs.  On August 24, 1988, we

reversed and remanded the case for hearing, finding that reasonable grounds for complaint had been stated under R.C. 4905.26. We also left to the commission's discretion "whether the hearing should be limited to Allnet's complaints against Ohio Bell or part of a 'generic' proceeding." Allnet Communications Serv., Inc. v. Pub. Util. Comm. (1988), 38 Ohio St.3d 195, 196, 527 N.E.2d 840, 842.

On remand, hearing was first scheduled to proceed on a complaint basis; the commission then encouraged all local exchange companies ("LECs") and IXCs to intervene (as in a generic case); then ruled that all LECs would be joined as respondents and all IXCs that intervened as complainants; and finally dismissed all parties except Allnet and Ohio Bell, finding that a generic proceeding would be held at a later date. The commission limited the issues for hearing as follows:

"1) [I]s Allnet being charged rates for premium access service when it is in fact receiving non-premium access service for intraLATA traffic?

"2) [I]s the failure of Ohio Bell to provide equal access, including one plus dialing for intraLATA calls carried by Allnet, unjust, discriminatory, anti-competitive and in violation of Section 4905.33 Revised Code?"

In the entry defining the issues in the complaint proceeding, the commission also permitted requests for intervention, but ultimately limited the scope of MCI Telecommunications Corporation's, Office of Consumers' Counsel's, and the Ohio Telephone Association's intervention to filing briefs, specifically finding that "this case will not decide the issue of intraLATA dial one competition for the state of Ohio, nor will it take the place of a rate proceeding in terms of configuring access charges." (Emphasis added.)

Hearings were finally held on December 15, 1989 and January 19, 1990; briefs were submitted by April 1990. In April 1992, the commission requested that the parties submit a survey of the availability of intra-LATA one-plus access in the states. The surveys were submitted in September 1992. On January 29, 1993, Allnet filed a complaint in mandamus with this court, requesting that the commission be compelled to issue an order in the complaint case. The order was then issued on April 15, 1993, and the complaint in mandamus was withdrawn on April 21, 1993. (Supreme Court case No. 93-177.)

The commission did not directly address in its order whether Allnet was being charged premium access rates for inferior access service; it found that the premium rate was appropriate by stating that the adoption of a non-premium charge for intra-LATA purposes would end the mirroring of the FCC-approved charges, and that Allnet had failed to prove that the fifty-five percent discount it recommended was the appropriate remedy, even assuming that non-premium access charges were warranted in the absence of one-plus dialing.

As to the second issue, the commission found that Allnet had not proved that Ohio Bell could "technologically" provide one-plus intra-LATA service, that Allnet had not proved that its customers were "damaged" by dialing the five-digit access code, and that Allnet had failed to prove that it was similarly situated to Ohio Bell or that Allnet was treated differently than any other IXC (negating claims of discrimination). The

commission also stated that, although Allnet's complaint was being denied, the issues raised could be revisited at a future point (most likely a generic case).

The cause is now before this court upon an appeal as of right.

Bell, Royer & Sanders Co., L.P.A., and Judith B. Sanders, for appellant.

Lee Fisher, Attorney General, James B. Gainer and Jeffrey D. Van Niel, Assistant Attorneys General, for appellee Public Utilities Commission.

Charles S. Rawlings, for intervening appellee Ohio Bell Telephone Co.

Per Curiam. For the following reasons, we affirm the order of the commission.

In its first and second propositions of law, Allnet argues that Ohio Bell's refusal to provide it one-plus dialing for intra-LATA toll calls and its failure to discount current access charges for such calls are unjust, unreasonable, and unjustly discriminatory under R.C. 4905.26, and in violation of R.C. 4905.32, 4905.33, and 4905.35. We disagree.

R.C. 4905.32 provides in part:

"No public utility shall charge, demand, exact, receive, or collect a different rate, rental, toll, or charge for any service rendered, or to be rendered, than that applicable to such service as specified in its schedule filed with the public utilities commission which is in effect at the time."

Allnet contends that Ohio Bell's existing tariff requires it to apply to Allnet's intra-LATA calls the non-premium access charge (fifty-five percent discount) otherwise applicable to interstate and intrastate inter-LATA calls. It reasons this is required by the commission's order in case No. 83-464-TP-COI, under which the access charges approved in the Ameritech Operating Companies Tariff FCC No. 2 are "mirrored" in Ohio. However, the non-premium charges approved in the FCC tariff are applied only in instances in which access is obtained through Feature Groups A and B. Because such inter-LATA calls are placed through local exchange facilities equipped with Feature Group D, they are properly charged the premium rate on the federal level. Because the Ohio tariff mirrors the FCC tariff, Ohio Bell is also properly charging the "premium" access rate for intra-LATA calls (as well as for intrastate inter-LATA calls) placed over Feature Group D facilities. The commission recognized as much in its order by finding that application of the fifty-five percent non-premium charge to intra-LATA calls as suggested by Allnet "would require the commission to end the mirroring of its charges with the FCC charges." Accordingly, Ohio Bell is charging in accordance with its tariff and has not violated R.C. 4905.32.

R.C. 4905.33 provides in part:

"No public utility shall directly or indirectly *** demand, collect or receive from any person, firm, or corporation a greater or lesser compensation for any services rendered *** than it charges *** or receives from any other person, firm, or corporation for doing a like and contemporaneous service under substantially the same

circumstances and conditions."

Allnet alleges that Ohio Bell is collecting "a greater compensation from Allnet than from its own MTS [long distance] service provision from a 'like and contemporaneous' service under the 'same circumstances.'" Allnet has provided no further reasoning or record citations to support this less-than-clear statement. In order to find discrimination under this provision, Allnet would have to show that the access charge assessed it for intra-LATA toll calls is greater than that which Ohio Bell assesses itself, as reflected in some manner as a part of Ohio Bell's overall MTS rates. Allnet has made no such showing on this record.

In its brief, Allnet relies on the commission's recent determination in In re the Establishment of Rules for Large Exchange Cos. (Jan. 7, 1993), PUCO No. 92-1149-TP-COI that a local exchange company must impute access charges to itself in determining their appropriate overall MTS rate. Even so, this requirement in itself does not establish what would be required for an R.C. 4905.33 violation -- that Ohio Bell has charged Allnet more for access than it is required to charge (or impute) to itself. Under W. Elec., supra, Ohio Bell is only required to provide access equal to that provided AT&T, which it has done. It would appear that Allnet's argument could not be raised until the commission affirmatively approved further competition in the intra-state market and placed Ohio Bell on equal footing with the competing IXCs. That Allnet's argument is premature is further evidenced by the difficulty with which it attempted to phrase the R.C. 4905.33 violation. This record does not show such a violation.

R.C. 4905.35 provides:

"No public utility shall make or give any undue or unreasonable preference or advantage to any person, firm, corporation, or locality, or subject any person, firm, corporation, or locality to any undue or unreasonable prejudice or disadvantage."

Under this provision, Allnet argues that it is discriminatory for Ohio Bell to offer itself one-plus dialing and not its intra-LATA competitors. Allnet makes a similar argument as to the second paragraph of R.C. 4905.32, which provides:

"No public utility *** shall extend to any person, firm, or corporation, any rule, regulation, privilege, or facility except such as are specified in such schedule and regularly and uniformly extended to all persons, firms, and corporations under like circumstances for like, or substantially similar, service." (Emphasis added.)

Under both provisions, discrimination is not prohibited per se but is prohibited only if without a reasonable basis. Twps. of Mahoning Cty. v. Pub. Util. Comm. (1979), 58 Ohio St.2d 40, 12 O.O. 3d 45, 388 N.E.2d 739. W. Elec., supra, provides clear rationale for the disparate treatment between the BOCs and the IXCs on an intra-LATA basis. Allnet's witness stated that Ohio Bell would not be significantly injured if IXCs were granted dialing parity on an intra-LATA basis. However, that statement was not supported by concrete data and was refuted by the testimony of one of Ohio Bell's witness, who stated that substantial damage would occur due to Ohio Bell's

inability to offer inter-LATA service in competition with the IXCs.  Clearly, the dialing disparity results from "unlike circumstances," and Allnet has failed to sustain its burden on this issue.  The commission correctly found:

"Nor was there a showing by Allnet that Allnet and Ohio Bell are similarly situated, or that Allnet is treated differently than any other IXC.  The mere fact that both Allnet and Ohio Bell are engaged in intraLATA interexchange market is not sufficient to prove unjust discrimination, as both companies differ in a myriad of ways, e.g., Ohio Bell provides basic local exchange service and under Ohio regulation, is the carrier of last resort."4

As its third proposition of law, Allnet argues that the commission erred in finding that Allnet had not proved that it was technically feasible for Ohio Bell to offer IXCs one-plus intra-LATA dialing.  Since we hold that Ohio Bell is charging Allnet the appropriate tariffed access charge and that Allnet has failed to show that such charge or the failure to offer one-plus access is discriminatory, this issue is not relevant. It is apparent that the issue is not so much whether the technology exists for the service, but the cost to Ohio Bell to implement the service and the service's effect on Ohio Bell's competitive position, considering that it is still precluded from offering inter-LATA toll service.  While the testimony showed that the service could be offered on a 1-PIC basis,5 the testimony conflicted as to the expense and competitive issues (addressed above), from which no definitive determination could be made.  We find that the commission was justified in not requiring Ohio Bell to offer one-plus intra-LATA service for IXCs absent a more detailed study, which was not provided by Allnet.

Allnet also argues that the commission failed to take administrative notice of Ameritech's (the parent of Ohio Bell) filing for a declaratory ruling with the FCC.  In that filing (made March 1, 1993), Ameritech offered to provide intra-LATA one-plus dialing to the IXCs if the BOCs were no longer prohibited from providing inter-LATA service.  On March 9, 1993, Allnet requested the commission to take administrative notice of the filing.  The commission did not specifically address the request or the filing in its order, and refused Allnet's request for rehearing on that issue, with little comment.

While the filing corroborates that one-plus service could technically be provided and apparently that the cost to do so is not an impediment, it leaves open the competitive issue which is the heart of this case -- whether further competition should be permitted in the intra-LATA market to Ohio Bell's potential disadvantage, without also permitting Ohio Bell to offer inter-LATA toll service.  Thus, this Ameritech filing adds little to the record, and the commission did not abuse its discretion (or prejudice Allnet) by failing to take administrative notice of the filing.

As its fourth proposition of law, Allnet contends that the commission's order violates R.C. 4903.09, which provides:

"In all contested cases *** the commission shall file, with the records of such cases, findings of fact and written opinions setting forth the reasons prompting the decision

arrived at, based upon said findings of fact."

The purpose of R.C. 4903.09 is to provide the court with sufficient details to enable it to determine how the commission reached its decision. Gen. Tel. Co. v. Pub. Util. Comm. (1972), 30 Ohio St.2d 271, 59 O.O.2d 338, 285 N.E.2d 34; MCI Telecommunications Corp. v. Pub. Util. Comm. (1988), 38 Ohio St.3d 266, 270, 527 N.E.2d 777, 781. While earlier decisions focus on the detail of the commission's findings and reasoning to assist the court in determining the reasonableness of the order (see Commercial Motor Freight, Inc. v. Pub. Util. Comm. [1951], 156 Ohio St. 360, 363-364, 46 O.O. 210, 211-212, 102 N.E.2d 842, 844-845), later cases focus on whether the commission has supplied some factual basis and reasoning based thereon in reaching its conclusion. See MCI Telecommunications Corp. v. Pub. Util. Comm. (1987), 32 Ohio St.3d 306, 513 N.E.2d 337.

Allnet argues that the commission merely recited the testimony of the witnesses and failed to apply any evidence in reaching its decision. The commission's order sets forth sufficient detail to permit the court to determine the basis of its reasoning. As to proposition of law one, the order shows (albeit implicitly) that Allnet is being charged the appropriate tariffed (premium) access charge. As to proposition of law two, the order shows that Allnet did not meet its burden of showing unjust discrimination. Since there was no unjust discrimination, proposition three's allegation of the technical feasibility of offering one-plus dialing is irrelevant.

Accordingly, we affirm the order of the commission.

Order affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, Resnick and F.E. Sweeney, JJ., concur.

Pfeifer, J., dissents.

FOOTNOTES

1   A feature group is a specific type and quality of access to a local exchange network. There are four types of access, Feature Groups A, B, C, and D.

2   One-plus dialing is the ability to place a toll call by dialing "1", the area code, and number of the called party.

3   "Presubscription" means that the subscribers may choose in advance which IXC is to automatically carry their one-plus inter-LATA toll calls.

4   In its initial brief under proposition one, Allnet made much of the commission's additional finding that Allnet failed to present evidence as to what the appropriate discount for intra-LATA access should be, assuming one was appropriate. Allnet argues that it does not have the burden to formulate the appropriate remedy, but that having shown that a practice is discriminatory, the duty of formulating a remedy lies with the commission. This technical position has support. In Twps. of Mahoning Cty., supra, this court, after finding rates as between certain customers discriminatory under R.C. 4905.33, remanded the cause to the commission for the appropriate proceeding to set new rates. Here, however, Allnet has failed on the threshold issue of undue discrimination, i.e., that there is no reasonable basis for the disparate treatment. In any event, the commission's implicit finding that the

fifty-five percent discount is inappropriate on an intra-LATA basis has merit because that discount took into consideration inferior technical quality as well as dialing disparity. Even Allnet's witness rather unenthusiastically supported the fifty-five percent discount, recognizing that the commission has the authority to adopt its own intra-LATA access structure and that the FCC discount was merely an example or suggestion that the commission could adopt.

5    1-PIC would permit a subscriber to use Allnet for its inter-LATA and intra-LATA toll traffic on a one-plus (presubscription) basis.

Pfeifer, J., dissenting.    The majority improperly interprets R.C. 4905.32 and 4905.35. These statutes integrate principles of competitiveness into the Ohio utilities market. R.C. 4905.32 and 4905.35 mandate that the commission strike down schemes which provide privileges to some competitors or which unduly place others at a disadvantage.

Ohio Bell's intra-LATA dialing scheme is self-serving and effectively eliminates the possibility of any competition in the intra-LATA calling market. Any customers making intra-LATA calls with Ohio Bell can simply dial 1 plus the number of the party they wish to contact. However, any customer desiring to place an intra-LATA call with any of Ohio Bell's competitors must first dial a cumbersome multi-digit access code. By inconveniencing anyone interested in contracting with its competitors, Ohio Bell secures for itself a monopoly in the intra-LATA call market. This is precisely the result that R.C. 4905.32 and 4905.35 prohibit.

Accordingly, I dissent.