O’Neill, J.
{¶ 1} Interstate Gas Supply, Inc. (“IGS”), a provider of competitive retail electric service, appeals as of right from orders of the Public Utilities Commission of Ohio authorizing Duke Energy Ohio, Inc. (“Duke”), to amend its corporate separation plan, thereby allowing Duke to engage in a new line of business: the offering of various nonelectric products and services to its customers. IGS claims that the commission’s orders violate R.C. 4928.17, Ohio’s corporate-separation-plan statute, and R.C. 4903.09, a general statute requiring the commission to file written opinions “setting forth the reasons prompting the decisions arrived at” in all contested cases.
{¶ 2} We agree with IGS that the commission violated R.C. 4903.09 by failing to sufficiently explain the basis for its decision. Accordingly, we reverse the commission’s orders and remand this case to the commission for further proceedings consistent with this opinion.
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
A. History of deregulation and corporate separation
{¶ 3} In 1999, the General Assembly restructured Ohio’s electric-utility industry to foster retail competition in the generation component of electric service. Am.Sub.S.B. No. 3, 148 Ohio Laws, Part IV, 7962. As we have repeatedly recognized, the legislature “altered the traditional rate-based regulation of elec- *511 trie utilities by requiring the three components of electric service — generation, transmission, and distribution — to be separated.” Indus. Energy Users-Ohio v. Pub. Util. Comm., 117 Ohio St.3d 486, 2008-Ohio-990, 885 N.E.2d 195, ¶ 5; see, e.g., Elyria Foundry Co. v. Pub. Util. Comm., 114 Ohio St.3d 305, 2007-Ohio-4164, 871 N.E.2d 1176, ¶ 52. Electric generation became an unregulated, competitive retail electric service, while electric distribution remained a regulated, noncompetitive service. Indus. Energy Users-Ohio at ¶ 6. Electric utilities were required to unbundle the three components so that customers could evaluate offers from competitive generators.
Unbundling of the service components also ensured that an electric utility would not subsidize the competitive generation portion of its business by allocating generation expenses to the regulated distribution service provided by the utility. Conversely, it ensured that distribution service would not subsidize the generation portion of the business. In short, each service component was required to stand on its own.
Migden-Ostrander v. Pub. Util. Comm., 102 Ohio St.3d 451, 2004-Ohio-3924, 812 N.E.2d 955, ¶ 4.
{¶ 4} To that end, the General Assembly also prohibited electric utility companies from engaging in the businesses of supplying both noncompetitive and competitive retail electric service (e.g., distribution and generation) — or from engaging in the businesses of supplying noncompetitive retail electric service (e.g., distribution) and offering a nonelectric product or service- — unless the utility implemented and operated under a commission-approved “corporate separation plan.” R.C. 4928.17(A). A utility’s corporate separation plan must provide, at a minimum, that the utility offer any competitive retail electric service or any nonelectric product or service “through a fully separated affiliate of the utility,” R.C. 4928.17(A)(1), unless the commission approves an alternative “functional” corporate separation plan under R.C. 4928.17(C), as explained more fully below.
B. The commission’s approval of Duke’s fourth amended corporate separation plan
{¶ 5} The commission first approved a corporate separation plan for Cincinnati Gas & Electric Company, now known as Duke Energy Ohio, Inc., in August 2000. Over the next 11 years, the commission approved a series of amendments to the plan, mostly involving Duke’s initial requests to maintain — and its eventual transfer of — its competitive generation assets.
{¶ 6} In April 2014, Duke filed an application for approval of a fourth amended corporate separation plan, which, among other things, sought commission approv *512 al to commence offering nonelectric products and services to its customers.[1] Duke’s proposed new business included such varied services as installing and performing maintenance on customer equipment, performing assessments of outage or voltage problems, making a generator available during construction, offering whole-house surge protection, and providing energy-consumption-analysis reports.
{¶ 7} IGS objected to Duke’s application, arguing that Ohio’s corporate-separation-plan statute required Duke to offer competitive services through a fully separated affiliate. Therefore, IGS argued that Duke — a regulated distribution utility — should not be permitted to offer products or services that were otherwise available in the marketplace from competitive suppliers.
{¶ 8} In June 2014, the commission approved Duke’s application, although the commission also imposed a series of conditions on the utility, including conditions to prevent anticompetitive subsidies from flowing between Duke’s regulated and unregulated businesses. After the commission denied IGS’s application for rehearing, IGS appealed to this court, and we granted Duke’s motion for leave to intervene as an appellee.
II. STANDARD OF REVIEW
{¶ 9} “R.C. 4903.13 provides that a [commission] order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable.” Constellation NewEnergy, Inc. v. Pub. Util. Comm., 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. The court will not reverse or modify a commission decision as to questions of fact when the record contains sufficient probative evidence to show that the commission’s decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. Monongahela Power Co. v. Pub. Util. Comm., 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29. The court, however, has “ ‘complete and independent power of review as to all questions of law' in appeals from the commission.” Ohio Consumers’ Counsel v. Pub. Util. Comm., 121 Ohio St.3d 362, 2009-Ohio-604, 904 N.E.2d 853, ¶ 13, quoting Ohio Edison Co. v. Pub. Util. Comm., 78 Ohio St.3d 466, 469, 678 N.E.2d 922 (1997).
*513 III. LAW AND ANALYSIS
A. The relevant statutory framework
{¶ 10} Two statutes are relevant to this ease: R.C. 4928.17 and 4903.09.
1. R.C. 4928.17: the corporate-separation-plan statute
{¶ 11} The parties disagree about how to interpret R.C. 4928.17(A), (C), and (D), and they also dispute which of those divisions of R.C. 4928.17 — if any — the commission relied on in reaching its decision. R.C. 4928.17(A) sets forth the general rules for corporate separation plans and requires that beginning January 1, 2001,
no electric utility shall engage in this state, either directly or through an affiliate, in the businesses of supplying a noncompetitive retail electric service and supplying a competitive retail electric service, or in the businesses of supplying a noncompetitive retail electric service and supplying a product or service other than retail electric service, unless the utility implements and operates under a corporate separation plan that is approved by the public utilities commission under this section, is consistent with the policy specified in section 4928.02 of the Revised Code, and achieves all of the following:
(1) The plan provides, at minimum, for the provision of the competitive retail electric service or the nonelectric product or service through a fully separated affiliate of the utility * * *.
{¶ 12} Thus, R.C. 4928.17(A) prohibits an electric utility from engaging in the businesses of supplying noncompetitive retail electric service and either supplying competitive retail electric service or offering nonelectric products and services unless the utility operates under a commission-approved corporate separation plan. Further, that plan must require, at a minimum, that the utility provide any competitive retail electric service or nonelectric products and services through a fully separated affiliate.
{¶ 13} R.C. 4928.17(C), however, provides an exception:
[F]or good cause shown, the commission may issue an order approving or modifying and approving a corporate separation plan under this section that does not comply with division (A)(1) of this section but complies with such functional separation requirements as the commission authorizes to apply for an interim period prescribed in the order, upon a finding that *514 such alternative plan will provide for ongoing compliance with the policy specified in section 4928.02 of the Revised Code.
{¶ 14} R.C. 4928.17(C) authorizes the commission to approve an interim, alternative “functional” corporate separation plan — even if the plan does not otherwise provide for the separation of the utility’s competitive and noncompetitive businesses — as long as the commission makes certain findings, including “good cause.”
{¶ 15} Finally, R.C. 4928.17(D) addresses requests to amend a corporate separation plan:
Any party may seek an amendment to a corporate separation plan approved under this section, and the commission, pursuant to a request from any party or on its own initiative, may order as it considers necessary the filing of an amended corporate separation plan to reflect changed circumstances.

2. R.C. 4-903.09: the reasoning-statement-requirement statute

{¶ 16} R.C. 4903.09 applies to all contested commission cases and requires the commission to file “findings of fact and written opinions setting forth the reasons prompting the decisions arrived at, based upon said findings of fact.” As we have previously explained, “[t]he purpose of R.C. 4903.09 is to provide the court with sufficient details to enable it to determine how the commission reached its decision.” Allnet Communications Servs., Inc. v. Pub. Util. Comm., 70 Ohio St.3d 202, 209, 638 N.E.2d 516 (1994).
B. Summary of the parties’ arguments
{¶ 17} IGS primarily argues that the commission’s orders violate R.C. 4928.17(A) because the commission authorized Duke — rather than one of its affiliates — to engage in the unregulated, competitive business of selling nonelectric products or services without otherwise approving Duke’s plan as an alternative functional corporate separation plan under R.C. 4928.17(C).[2] Further, IGS asserts that even if the commission had approved Duke’s application under R.C. 4928.17(C), the record did not establish that Duke met the statutory conditions for a functional corporate separation plan. Finally, IGS argues that the commis *515 sion’s orders also violate R.C. 4903.09, because the commission failed to sufficiently explain how Duke’s amended plan complied with the corporate-separation-plan requirements in R.C. 4928.17(A) or (C).
{¶ 18} In response, the commission and Duke primarily argue that the commission approved Duke’s application under R.C. 4928.17(D), which concerns amendments to previously approved corporate separation plans. Alternatively, the commission and Duke assert that Duke’s plan also satisfied the statutory conditions for approval as a functional corporate separation plan under R.C. 4928.17(C).
C. The commission’s orders violated R.C. 4903.09
{¶ 19} We conclude that IGS has established a violation of R.C. 4903.09. For an appellant to prevail under that statute, the party must show at least three things: “first, that the commission initially failed to explain a material matter; second, that [the appellant] brought that failure to the commission’s attention through an application for rehearing; and third, that the commission still failed to explain itself.” In re Application of Columbus S. Power Co., 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655, ¶ 71. Here, the commission failed to explain a material matter — i.e., how Duke’s fourth amended corporate separation plan complied with the specific terms of R.C. 4928.17 — despite numerous requests from IGS asking it to do so.
{¶ 20} Specifically, in IGS’s initial objections to Duke’s fourth amended plan, IGS argued that if Duke intended to engage in a new unregulated business, R.C. 4928.17(A) required that it do so through a fully separated affiliate, unless the commission approved the plan under R.C. 4928.17(C). In its finding and order, the commission acknowledged IGS’s argument but did not specifically address it. The commission merely stated that there was “no substantiated reason, at this time, to find that the proposed revisions to the plan are not in compliance with state policy or the Commission’s corporate separation rules.”
{¶ 21} IGS repeated the argument in its application for rehearing. But in its rehearing entry, the commission again failed to explain how Duke’s fourth amended plan actually complied with the relevant provisions in R.C. 4928.17. Instead, the commission stated:
Contrary to the assertions of IGS * * *, our decision fully adheres with all statutory requirements. * * * We are cognizant of the requirements set forth in the statute regarding corporate separation and our approval of the application in these cases affords Duke the requisite authority needed to implement its revised corporate separation plan, subject to the requirements set forth in the Order.
*516 {¶ 22} Without more explanation, the commission’s reasoning is not discernible. Duke requested approval to engage in the unregulated, competitive business of selling nonelectric products and services, which is prohibited under R.C. 4928.17(A)(1) unless Duke offers the services through a fully separated affiliate or the commission approves an alternative functional corporate separation plan under R.C. 4928.17(C). The commission’s orders summarily concluded that Duke’s application is consistent with state policy and corporate-separation-plan rules, but the commission never explained how Duke’s fourth amended plan complied with the plain language in R.C. 4928.17(A) or (C).
{¶ 23} This court has long held that when “the commission has not set forth in its order its reasons in sufficient detail to enable the Supreme Court, upon appeal, to determine how the commission reached its decision, the order will be set aside.” Gen. Tel. Co. v. Pub. Util. Comm., 30 Ohio St.2d 271, 277, 285 N.E.2d 34 (1972); see also Ohio Consumers’ Counsel v. Pub. Util. Comm., 111 Ohio St.3d 300, 2006-Ohio-5789, 856 N.E.2d 213, ¶ 35 (“The commission’s reasoning and the factual basis supporting the modifications on rehearing must be discernible from its orders”). Given the different avenues toward compliance in R.C. 4928.17, the commission’s conclusory statement that Duke’s plan was “in compliance with state policy [and] the Commission’s corporate separation rules” was insufficient to enable us to determine how it reached its decision.
{¶ 24} Further, we cannot accept appellate counsel’s post hoc rationalizations purporting to explain why Duke’s amended plan complied with R.C. 4928.17(C) or (D). In their filings in this court, counsel for the commission and for Duke primarily argue that the commission approved Duke’s application under R.C. 4928.17(D), which they argue gives the commission broad latitude to approve any amendment to a previously approved corporate separation plan. But the commission’s underlying orders failed to cite R.C. 4928.17(D) — let alone to identify that provision as authority for its decision. Waiting until appellate briefing to explain the basis or authority for a commission decision does not satisfy R.C. 4903.09. Indeed, the United States Supreme Court has noted that it typically “will not uphold a discretionary agency decision where the agency has offered a justification in court different from what it provided in its opinion.” Morgan Stanley Capital Group, Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cty., Washington, 554 U..S. 527, 544, 128 S.Ct. 2733, 171 L.Ed.2d 607 (2008). If the commission approved Duke’s application under R.C. 4928.17(D), it should have said so in its ordérs and should have explained how that specific provision authorized Duke’s amended plan.
{¶25} Similarly, the commission’s orders do not indicate that it made the necessary findings for approval of Duke’s application as an alternative functional *517 corporate separation plan under R.C. 4928.17(C). For example, the commission argues on appeal that “good cause” existed to approve Duke’s amended plan under R.C. 4928.17(C) because the commission imposed conditions that defined the parameters by which Duke could offer the new nonelectric products and services. But nowhere in the commission’s orders does it identify those conditions as the “good cause” for approving a “functional” corporate separation plan.
{¶ 26} Additionally, the commission argues in its brief that Duke’s plan was approved on an “interim” basis and that it is not permanent because it “is subject to termination by the Commission, at any time, for any misstep.” The word “interim” is defined as “a time intervening,” “a provisional decision or arrangement,” or “in the meantime.” Webster’s Third New International Dictionary 1179 (1993). The commission’s orders essentially authorize Duke to sell nonelectric products and services indefinitely, as long as Duke complies with the conditions imposed in the commission’s orders. Under any definition, that is not an “interim” corporate separation plan. We do not accept the commission’s counsel’s attempt to recast the commission’s decision to be something that it is not. If the commission approved Duke’s amended plan under R.C. 4928.17(C), the commission should have made the necessary findings required by that provision.
D. The appropriate remedy
{¶ 27} As a remedy, IGS requests that we instruct the commission to order Duke to amend its corporate separation plan to require that it provide any nonelectric products or services through a fully separated affiliate. Although we are admittedly skeptical as to how the commission could approve Duke’s amended plan under R.C. 4928.17(C) or (D) based on the record before us, we are also cognizant that the General Assembly has given the commission substantial discretion in approving an alternative functional corporate separation plan or an amended corporate separation plan under those provisions. See, e.g., Ohio Consumers’ Counsel, 111 Ohio St.3d 300, 2006-Ohio-5789, 856 N.E.2d 213, at ¶ 72, quoting R.C. 4928.17(C) (“The commission has discretion to approve an alternative functional corporate separation plan for an interim period upon a determination of ‘good cause’ ”); id. at ¶ 74 (“Under R.C. 4928.17(C), the commission’s discretion is limited only by the ‘good cause’ standard and the requirement that the commission find that ‘such alternative plan will provide for ongoing compliance with the policy specified in’ R.C. 4928.02”).
{¶ 28} Given that discretion, we are reluctant to resolve the meaning of disputed language in R.C. 4928.17(C) or (D) or to make findings under those provisions when the provisions were not first addressed by the commission in the proceedings below — especially considering our history of relying on the agency’s *518 administrative construction of its own statutes. Accordingly, remanding this case to the commission with instructions to fully explain the basis for its decisions under the relevant provisions of R.C. 4928.17 is the appropriate remedy.
IV. CONCLUSION
{¶ 29} For the reasons explained above, the commission violated R.C. 4903.09. We reverse the orders, and we remand this case to the commission with instructions to fully address IGS’s statutory arguments, to issue findings that thoroughly explain how — if at all — Duke’s application complies with the specific relevant provisions in R.C. 4928.17, and to identify the evidence that the commission considered to support its decision.
Orders reversed and cause remanded.
O’Connor, C.J., and Lanzinger and French, JJ., concur.
O’Donnell, J., concurs in part and dissents in part, with an opinion.
Kennedy, J., concurs in part and dissents in part, with an opinion joined by Pfeifer, J.

. The parties use a number of additional terms to describe these new offerings, including “special customer services,” “electric-related products or services,” “products or services other than retail electric service,” and “unregulated noncommodity services.” For the sake of consistency, we refer to Duke’s proposed new business as the offering of “nonelectric products and services.”

. Throughout its merit brief, IGS characterizes the authorization of an alternative functional corporate separation plan under R.C. 4928.17(C) as the granting of a “waiver” by the commission. The word “waiver,” however, does not appear in R.C. 4928.17.